NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| ANN SCHILDKNECHT and ELLEN HEINE, | : : | |
| Plaintiffs, | : : | Civil Case No. 13-7228 (FSH) |
| v. | : : | **OPINION & ORDER** |
| TOWNSHIP OF MONTCLAIR and COMMISSIONER OF DEPARTMENT OF COMMUNITY AFFAIRS, | : : : : | Date: April 21, 2014 |
| Defendants. | : : | |

**HOCHBERG, District Judge:**

This matter comes before the Court upon Plaintiffs' motion for reconsideration (Dkt. No. 18) of the Court's March 4, 2014 Opinion and Order (Dkt. No. 16), which granted a motion to dismiss filed by Defendant Township of Montclair ("Montclair")[1]; and

it appearing that a motion for reconsideration is governed by Local Civil Rule 7.1(i); and

it appearing that Local Civil Rule 7.1(i) provides for the reconsideration of an order if the motion is filed within 14 days after entry of the disputed order; and

it appearing that the purpose of a motion for reconsideration is "to correct manifest errors of law or fact or to present newly discovered evidence,"[2] *Harsco Corp. v. Zlotnicki*, 779 F.2d

---

[1] A more detailed factual background may be found in this Court's opinion denying Plaintiffs' request for a preliminary injunction (Dkt. No. 9) and its opinion granting Montclair's motion to dismiss (Dkt. No. 16).

[2] Plaintiffs never opposed Montclair's motion to dismiss. Nonetheless, Plaintiffs argue that the Court should reconsider its Order granting the Township of Montclair's motion to (Footnote continued on next page . . . )

906, 909 (3d Cir. 1985); *see also P. Shoenfeld Asset Mgmt. LLC v. Cendent Corp.*, 161 F. Supp. 2d 349, 352 (D.N.J. 2001), *Yurecko v. Port Authority Trans-Hudson Corp.*, 279 F. Supp. 2d 606, 609 (D.N.J. 2003); and

it appearing that Local Civil Rule 7.1(i) requires that the moving party set forth "concisely the matters or controlling decisions which the party believes the Judge . . . has overlooked;" and

it appearing that "[a] party seeking reconsideration must show more than a disagreement with the Court's decision," *G-69 v. Degnan*, 748 F. Supp. 274, 275 (D.N.J. 1990); and

it appearing that "[a] mere 'recapitulation of the cases and arguments considered by the court before rendering its original decision'" does not warrant reargument, *Elizabethtown Water Co. v. Hartford Cas. Ins. Co.*, 18 F. Supp. 2d 464, 466 (D.N.J. 1998) (quoting *Carteret Savings Bank F.A. v. Shushan*, 721 F. Supp. 705, 706 (D.N.J. 1989)); and

---

dismiss (Dkt. No. 16) because they "did not receive the motion." (Dkt. No. 18-1 at 2.) But Plaintiffs listed their residence as "120 Undercliff Road, Montclair, NJ 07044" in their filings with this Court. (Dkt. No. 1-2.) Defendant Montclair delivered their motion to the address listed on Plaintiffs' filings (Dkt. No. 14-3), which is all they are required to do under the Federal Rules of Civil Procedure. *See* Fed. R. Civ. P. 5(b)(2)(c). It is Plaintiffs' responsibility to keep their address current. It is also notable that Plaintiff Heine has several other matters in this district and has listed her address as 15 East 19th Street, Patterson, NJ 01724 in those matters. (*See*, *e.g.*, *Heine, et al. v. Holahan, et al.*, Civ. No. 13-7251; *Heine, et al. v. City of New Brunswick, et al.*, Civ. No. 13-6025; *Heine v. Bergen County Sheriff's Dept. and Correctional Facility*, Civ. No. 12-6194; *Heine, et al. v. City of Garfield*, Civ. No. 11-2655; *Heine, et al. v. Commissioner of the Dept. of Community Affairs of the State of New Jersey, et al*., Civ. No. 11-5347; *Heine, et al. v. City of Garfield, et al.*, Civ. No. 12-4171.) It is imperative that parties keep their addresses current in these matters. Plaintiffs shall file a corrected civil coversheet that provides their correct addresses for mailings of all pleadings.

Defendant Heine also argues that she has standing in this matter because she is a creditor to Schildknecht but this is not enough to confer standing on Heine. *See Warth v. Seldin*, 422 U.S. 490, 499 (1975) ("[T]his Court has held that the plaintiff generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties."). Heine does not assert her own rights—only Schildknecht's rights—and does not have standing in this matter.

it appearing that a court may grant a properly filed motion for reconsideration for one of three reasons: (1) an intervening change in the controlling law has occurred; (2) evidence not previously available has become available; or (3) it is necessary to correct a clear error of law or fact or prevent manifest injustice, *Max's Seafood Cafe, By Lou-Ann, Inc. v. Max Quinteros*, 176 F.3d 669, 677 (3d Cir. 1999); *Database Am., Inc. v. Bellsouth Advertising & Publ'g. Corp.*, 825 F. Supp. 1216, 1220 (D.N.J. 1993) (citing *Weyerhaeuser Corp. v. Koppers Co.*, 771 F. Supp. 1406, 1419 (D. Md. 1991)); *see also Carmichael v. Everson*, 2004 U.S. Dist. Lexis 11742, at *2-3 (D.N.J. May 21, 2004); *Miletta v. United States*, Civ. No. 02-1349, 2005 WL 1318867, at *8 (D.N.J. May 27, 2005); and

it appearing that a motion for reconsideration is improper when it is used to "'ask the Court to rethink what [it] had already thought through — rightly or wrongly,'" *Ciba-Geigy Corp. v. Alza Corp.*, Civ. No. 91-5286, 1993 WL 90412, at *1 (D.N.J. March 25, 1993) (quoting *Oritani Sav. & Loan Ass'n v. Fidelity & Deposit Co.*, 744 F. Supp. 1311, 1314 (D.N.J. 1990), *rev'd on other grounds*, 989 F.2d 635 (3d Cir. 1993); and

it appearing that because reconsideration of a judgment after its entry is an extraordinary remedy, motions to reconsider or reargue are granted "very sparingly," *Maldonado v. Lucca*, 636 F. Supp. 621, 630 (D.N.J. 1986); and

it appearing that disagreement with the Court's initial decision as the basis for bringing a motion "should be dealt with in the normal appellate process, not on a motion for reargument," *Florham Park Chevron, Inc. v. Chevron U.S.A., Inc.*, 680 F. Supp. 159, 163 (D.N.J. 1988); and

it appearing that (1) there has been no intervening change in controlling law; (2) Plaintiffs' alleged "new evidence" does not change the outcome of this matter;[3] and (3) there has been no clear error of law or fact or manifest injustice; and

---

[3] Plaintiffs argue that the documents submitted by the Township in opposition to Plaintiffs' request for a preliminary injunction should be considered "documents integral to or explicitly relied on in the complaint" and support the allegations in their various complaints. (Dkt. No. 18-1 at 2.) While the Court did not consider this evidence when granting Defendant's motion to dismiss, even if the Court were to consider this new evidence, nothing therein changes the outcome of this matter. Indeed, these documents further support the Court's decision to dismiss the Township from this matter.

In short, the documents submitted by the Township in opposition to Plaintiffs' request for a preliminary injunction show that the state of Schildknecht's home was horrific. The following is a short summary of the documents filed by the Township. A more detailed description of Schildknecht's home can be found in the Court's order denying Plaintiffs' request for a preliminary injunction:

After knocking on the door and receiving no answer, the police attempted to enter Schildknecht's home to check on her but were overwhelmed by the home's intense odor. The inside of the house was filled with garbage and other items with very little room for a person to move around. The police continued to call for Schildknecht but did not receive an answer. Due to the intense odor and state of the home, the police contacted the fire department, code enforcement, and animal control. The police eventually located Schildknecht through an open window and began communicating with her. Schildknecht told the police that the home had no running water, and she was using a portable toilet located next to the bed. She said that she felt weak and had been in bed for two hours. The responders could only enter the home once they donned Level-B hazmat suits. Once inside, they discovered garbage, animal cages filled with feces, and insects. Schildknecht was removed from the house and transported to the hospital because of open sores on her feet and dehydration. Due to the state of the home, Schildknecht had to be carried out in a Tyvek suit and decontaminated to ensure there were no insects or other material on her.

Plaintiffs argue that the affidavit of the Township's manager in opposition to Plaintiffs' request for a preliminary injunction shows that the actions taken by emergency responders are an official position adopted by the Township. Not so. Instead, it is clear that the manager's affidavit was provided to establish the origin and validity of the documents relied on by the Township in opposing Plaintiffs' request for a preliminary injunction. The affidavit does not show that "the alleged constitutional transgression implements or executes a policy, regulation, or decision officially adopted by the governing body or informally adopted by custom." *McTernan v. City of York, Pa.*, 564 F.3d 636, 657 (3d Cir. 2009). Nor do they support Plaintiffs' allegation that the events surrounding Schildknecht's removal from her home were an official position by Montclair. Moreover, Plaintiffs concede that they do not know who trains the Township's inspectors (in addition to not alleging a failure to train). (Dkt. No. 18-1 at 3.) This alone necessitates the denial of Plaintiffs' motion for reconsideration.

(Footnote continued on next page . . . )

it appearing that Plaintiffs merely disagree with this Court's prior decision;

for all of the reasons stated in the Court's Order dated March 4, 2014 and for those additional reasons stated herein,[4]

**ACCORDINGLY**, it is on this 21st day of April, 2014,

**ORDERED** that Plaintiffs' motion for reconsideration (Dkt. No. 18) is **DENIED**; and it is further

**ORDERED** that the Clerk of the Court mail a copy of this Order to the *pro se* Plaintiffs.

---

It is clear from the papers on which Plaintiffs now seek to rely, that the actions of the employees of Montclair were justified due to the emergency situation faced by the police and other first responders. *See*, *e.g.*, *Elsmere Park Club, L.P. v. Town of Elsmere*, 542 F.3d 412, 417-18 (3d Cir. 2008) ("[W]here there is competent evidence allowing the official to reasonably believe that an emergency does in fact exist . . . [,] the discretionary invocation of an emergency procedure results in a constitutional violation only where such invocation is arbitrary or amounts to an abuse of discretion."); *see also Michigan v. Tyler*, 436 U.S. 499, 509 (1978) ("[I]n the regulatory field, our cases have recognized the importance of 'prompt inspections, even without a warrant, . . . in emergency situations.'"); *Munoz v. City of Union City*, 481 F. App'x 754, 758 (3d Cir. 2012). The documents Plaintiffs seek to use show an emergency situation existed here. The responders determined that the home was dangerous and uninhabitable. Evidence of feces, stacks of garbage, collected items, insects, lack of running water, and even Schildknecht's state of health confirm that the home posed an imminent health hazard to anyone who ventured inside.

Moreover, Plaintiffs now concede that they have not availed themselves of the "controlled access" to the home offered by Montclair. (Dkt. No. 18-1 at 2-3.) Because Plaintiffs have not attempted to use the remedies offered by Montclair, there can be no procedural due process violation. *See Elsmere*, 542 F.3d at 423 ("[A] procedural due process violation cannot have occurred when the governmental actor provides apparently adequate procedural remedies and the plaintiff has not availed himself of those remedies.").

Finally, Plaintiffs' inverse condemnation argument lacks merit for two reasons. First, "[a] municipality may, in the exercise of its police power, without compensation destroy a building or structure that is a menace to the public safety or welfare, or require the owner to demolish the dangerous piece of property." *In re 106 N. Walnut, LLC*, 447 F. App'x 305, 309 (3d Cir. 2011). Second, "[a] property owner is only entitled to recover, however, if the government action 'deprived [him] of all or substantially all of the beneficial use' of the property." *Id.* at 308. Here, Schildknecht's property still has value. Moreover, the house is clearly a public safety concern, and the owner may reenter the home as soon as it is made habitable.

[4] Plaintiffs also argue that Montclair is "holding themselves out as the 'housing authority'" and, therefore, should be subject to the Fair Housing Act. (Dkt. No. 18-1 at 4.) For the reasons stated in the Court's prior opinion, the Fair Housing Act does not apply here.

5

**IT IS SO ORDERED.**

**/s/ Faith S. Hochberg_____**
**Hon. Faith S. Hochberg, U.S.D.J.**